## POWER OF PUBLIC OFFICER TO REDUCE EMPLOYEE IN RANK.

Circuit Court of Cuyahoga County.

STATE OF OHIO, EX REL CHARLES LYLE, V. C. W. LAPP, DIRECTOR OF POLICE.

Decided, December 24, 1901.

*Public Officers—Power Given to the Head of a Department to Remove an Officer Includes Power to Reduce Rank.*

The power conferred by Section 1545-24, Revised Statutes, upon the head of a department of a municipal corporation to remove or suspend any officer or employee of that department, includes a power to reduce in rank as it is the exercise of a power of the same inherent nature as the power granted.

*Lamson & Mathews*, for plaintiff.
*Beacom & Babcock*, contra.

MARVIN, J.; HALE, J., and CALDWELL, J., concur.

The State of Ohio, ex rel Charles Lyle, against C. W. Lapp, Director of Police of the City of Cleveland, is a proceeding in mandamus.

The relator was a sergeant on the police force of the city of Cleveland.

The defendant is now director of police of said city of Cleveland, which position he has held since the 5th day of April, 1901. For two years immediately preceding the incumbency of Director Lapp, the office which he now holds was held by one Michael Barrett.

On or about the 2d day of November, 1900, certain charges and specifications were made, in writing, against said relator as such sergeant of police. These charges and specifications were filed with the director of police. Notice of the filing of such charges and specifications, and the time when the relator would be brought to trial thereon, was duly given the relator.

On or about the 20th day of November, 1900, a trial of the relator was had upon such charges and specifications before a tribunal composed, as provided by law, of the mayor of said

city, the president of the city council and the director of law of the city.

The trial resulted in a finding, on the 28th day of January, 1901, that the relator was guilty of the charges, and thereafter, on the 9th day of February, 1901, said Michael Barrett, as such director of police, pronounced sentence against the relator, that he be, to quote the language of the petition herein, "removed from his said office of sergeant and reduced to the rank of patrolman in the department of police of said city."

On the 24th day of May, 1901, the relator demanded of the defendant that he be reinstated in the position of sergeant. This demand not being complied with, he filed his petition in this action on the 19th of June, 1901, praying for an order of the court commanding the defendant to restore him to his former position of sergeant.

On the part of the defendant it is urged that there was such laches on the part of the relator in commencing this proceeding as should bar him from the relief sought. Without going into a discussion of this question, we hold that, under the circumstances in this case, the relator did not so sleep upon his rights as to deprive him of the right to a full hearing upon the merits of his case.

The time between the removal of the relator from office or the reduction in rank, to the time of the beginning of the action, was four months and ten days. Within four months he had made the demand upon the defendant to be restored, and we hold that he forfeited nothing by the delay.

This brings us to the consideration of the question made by the plaintiff, as to whether the director exceeded the authority vested in him, when he made the order reducing the relator from the rank of sergeant to that of patrolman.

The trial of the relator was had under the provisions of Section 1545 of the Revised Statutes, sub-section 24 of which reads:

"The head of any department may, by written order giving his reasons therefor, remove or suspend any officer or employee of such department, provided the same shall not be done for political reasons, and such written orders shall be recorded in

the records of the department and a copy thereof filed with the
mayor, and provided that no member of the police, fire or sani-
tary police force shall be removed or reduced in rank, except
for cause, to be assigned in writing after due notice, and a
public hearing, if demanded by the accused, before a tribunal
composed of the mayor, who shall be chairman thereof, the
director of law and the president of the city council, but the
head of the police, fire or sanitary police force, as the case may
be, may suspend the accused pending the hearing of the charge
preferred against him.''

It will be noticed that the authority given the director by
this section, is to ''remove or suspend any officer,'' etc.

The argument on the part of the relator is that the director
could do nothing but *"remove"* absolutely from the force, or
suspend the officer, found guilty upon the trial, and that neither
of these two things was done; and that, therefore, the order
actually made was a nullity.

On the other hand, attention is called to the language in a
later part of the section, which reads: ''Provided that no mem-
ber of the police, fire or sanitary police force shall be removed
or reduced in rank except for cause,'' etc., and the claim is
made that the Legislature must have understood that author-
ity had been granted the head of this department to ''reduce
in rank,'' or those words would not have been used in this pro-
viso.  To this it is answered that Sections 1930-31, Revised
Statutes, are in full force as to the city of Cleveland as well
as in other parts of the state, and that provision is made in these
sections for reduction in rank of members of the police force
who belong to the detective branch of service, and that, there-
fore, this provision is made, that the section may apply to the
entire force—the section under consideration, 1545-24—includ-
ing the detective branch.

It should be borne in mind, however, that these later sections,
1930-31, are upon a subject entirely distinct from the general
provisions in reference to the police force of this city, and this
being so, are not in conflict with legislative enactment in Section
1545, sub-section 24, which should include a reduction in rank
as well as a dismissal of such officer entirely from the police
force.

It has been held in several of the states that authority given to remove an officer from his position necessarily carries with it the authority to suspend an officer. It is not claimed that this was a suspension, but that, because of certain authority given to remove from office, it necessarily carries with it the right to suspend. In *State, ex rel Brison,* v. *Lingo,* 26 Mo., 496, proceeding was in the nature of *quo warranto* on relation of the circuit attorney charging the defendant with unlawfully exercising the office of superintendent. Bryson had been superintendent of the workhouse, and an order had been made suspending him from the performance of his duties. The court, discussing the statute under which the action was taken, says, on page 499: "The power to remove necessarily includes the minor power to suspend."

In the case of *Shannon* v. *City of Portsmouth,* 54 N. H., 183, the charter of the city of Portsmouth empowered the mayor and aldermen to remove constables and police officers. By a vote of the mayor and aldermen, the plaintiff, a constable and police officer, was suspended from the duties of his office on the police force, and from that time was not permitted to perform the duties of the office, although he was ready and offered to do so, until he was afterwards re-instated. It was held that he could not recover for services during the period of his suspension; and, on page 184, in the opinion, the court says:

"It does not seem to require any argument to show that the power to remove must include the power to suspend."

In the case, however, of *State, ex rel Tyrrell,* v. *Common Council of Jersey City,* 25 N. J. Law, 536, one who was a member of the city council claimed relief because the council had by resolution instructed the clerk of the council not to call his name in calling the rolls—had instructed the president of the council not to appoint him upon any committee, and the court say that that was, in effect, a suspension of this officer from the performance of his duties; that the action of the council in directing the clerk not to call the name of this member, and in directing the president of the council not to appoint him upon any committee, was, in effect, a suspension of such councilman

from his office, and the court, in speaking of that, holds contrary to the holding in Missouri and New Hampshire, that the power to expel, if the council had power to expel, did not carry with it the power to suspend.

But this language is used in the opinion, on page 544:

"It only remains to be considered, whether the action of the common council in resolving that 'the president of council be directed not to appoint Tyrrell on any committee, that the clerk do not call his name among the list of names in any action, vote, or proceeding of the council, and that he be not allowed to take part in any debate on any question which may come before the board of aldermen, is warranted by law. We think it entirely clear that it is not. This proceeding amounts to a suspension of the relator from the exercise of his official duties as a member of that body. It leaves his constituents unrepresented and without remedy. Expulsion creates a vacancy that can be supplied by a new election. Suspension from the duties of the office creates no vacancy; the seat is filled, but the occupant is silenced. The charter vests no such power in the council; it would be extraordinary if it did. The power is to expel, not to suspend.'

"In the case of *Gregory* v. *Mayor, Aldermen and Commonalty of New York*, 113 N. Y., 416, a similar holding to that in the New Jersey case to which attention has just been called, is made. Judge Peckham delivered the opinion and holds that the power to expel or remove from office, does *not* carry with it the power to suspend; holding as the court in New Jersey held, but he gives the reason, on page 419:

"Whether the power to remove includes the power to suspend, must, as it seems to us, depend, among other things, upon the question whether the suspension in the particular case would be an exercise of a power of the same inherent nature as that of removal, and only a minor exercise of such power, or whether it would work such different results that no inference of its existence should be indulged in, based only upon the grant of the specific power to remove. We think it is apparent that the two powers can not always be properly respectively described as the greater and the less, and, consequently, it can not always be determined, simply upon that ground, that the suspension is valid because there was a power to remove. The power to remove is the power to cause a vacancy in the position held by the person removed, which may be filled at once, and if the duties are such as to demand it, it should be thus filled. The power to suspend causes no vacancy and gives no occasion

for the power to fill one. The result is that there may be an office, an officer and no vacancy, and yet none to discharge the duties of the office."

Continuing in the same line of reasoning, the court held, as already said, that the power to remove does not carry with it the power to suspend, and the reason here given by Judge Peckham is, that it is not an exercise of the same power, that is, an exercise of a power of the same inherent nature as that of removal. The power to suspend causes no vacancy; the power to suspend, when exercised, leaves no vacancy in the office that can be filled and, therefore, leaves the duties of the office to be performed by no one. It is because it is not an exercise of power of the same inherent nature as that of removal, but minor in degree, that the power to remove does *not* carry with it the power to suspend.

Applying that reasoning to the case before us, it would seem to result in holding that since the reduction in rank, the removal of one from the position of a sergeant and, in the same order, constituting the person so holding the position of sergeant, a patrolman, is an exercise of a power of the same inherent nature as the power to remove, and only a minor exercise of such power; and, therefore, the reason why the power to remove in the opinion of Judge Peckham and the New Jersey court does not carry with it the right to suspend, does not exist in a case where it is a reduction in rank. But there is another reason why, in our judgment, the order made in this case was not a nullity.

The relator held his office from which the director of police, under the section already read, had power, after a trial, conviction, etc., and proper proceedings, "to remove" (in the express language). To remove from what, except from the office which the party held. He did remove him from that office. Another section provides that the head of the department may appoint to office, and he did appoint this man, in the same order, is true, a patrolman; and the only complaint he makes here, is that he was not *absolutely* removed from the force.

It must be remembered that this order is made for the protection of the officers. The purpose of the order is to protect the officers who have once got upon the police force or in the other departments of the city government. It is to protect them that this order was given.

Suppose the words were left out of this section, "reduced in rank," and the section read, "Provided the same shall not be done for any political reasons, * * * no member of the police force or sanitary police force shall be removed from office except for cause to be assigned." Supposing it read that way, omitting the words "reduced in rank"?

The provision is that one shall not be removed for political reasons, whether an officer of the police force, or of any political department. Suppose the words "reduced in rank" were omitted, and the director should, for political reasons, reduce one in rank without any trial, simply and purely in the exercise of arbitrary power, and purely for political reasons had issued an order that one, who was a captain of police, should be reduced to the position of patrolman: is there any doubt that the captain could appeal and say "You have undertaken to remove me from office without a trial in violation of that statute?" It seems to be clear that protection would be given to the officer, under this statute.

The result is, we hold that the action of the director in issuing the order reducing the officer in rank, was in the exercise of the power conferred upon him, and the petition is dismissed at relator's costs.